SVENSON v. SVENSON.

(Supreme Court, Appellate Division, Second Department.　January 9, 1903.)

1. MARRIAGE—ANNULMENT—FRAUD—INCAPACITY—VENEREAL DISEASE.

　　Where at the time of a marriage the husband is afflicted with a contagious and chronic venereal disease, which fact he does not disclose to his wife until after marriage, and by reason thereof the marriage is never consummated, and the husband is physically incapable of consummating the same, there is ground for annulment if the application therefor is made in good faith and without collusion.

2. SAME—GOOD FAITH.

　　Plaintiff and defendant were engaged to be publicly married on April 4, 1900, and invitations had been issued for a wedding reception on that day. They were privately married, on the 29th day of March, preceding, but the reception was held as intended. In December, 1901, plaintiff sued to annul the marriage for defendant's fraud in concealing the fact that he was afflicted at the time with a contagious and chronic venereal disease. Plaintiff was unable to testify when she first learned of her husband's physical condition, but testified that the marriage had never been consummated. Defendant did not answer, but appeared in person and by attorney, and, when his physician was called, waived all objection to the admission of his testimony,—his counsel stating that his client had examined carefully into the facts, and was convinced that he had no defense,—after which the physician testified that prior and subsequent to the marriage he had treated defendant for a contagious venereal disease,

---

¶ 1. See Marriage, vol. 34, Cent. Dig. § 116.

and that defendant was incapacitated from consummating the marriage, but that at the time of the trial he had practically recovered. *Held*, that the evidence tended to show collusion between the parties, precluding relief.

Goodrich, P. J., dissenting.

Appeal from trial term, Kings county.

Action by Marguerite Svenson against Oscar H. Svenson to annul a marriage. From a judgment dismissing the complaint on the merits, plaintiff appeals. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, WOODWARD, and HIRSCHBERG, JJ.

J. Stewart Ross, for appellant.

HIRSCHBERG, J. The action is brought to procure a judgment annulling the plaintiff's marriage with the defendant. The marriage ceremony was performed on the 29th day of March, 1900, and the action was commenced in December, 1901. The basis of the action is the alleged fraudulent concealment by the defendant of the fact that at the time of the marriage he was suffering from a chronic and contagious venereal disease. The action was undefended; the defendant appearing by attorney, but not answering. On the trial, proof was furnished by the evidence of the defendant's physician that the defendant was suffering from syphilis at the time of the marriage, being under the physician's treatment for the disease from February 12, 1900, until the time of the trial, a period of nearly two years; that at the time of the marriage he was suffering from a lesion of the parts sufficient to incapacitate him from accomplishing the marriage relation, but that at the time of the trial he had practically recovered. The plaintiff testified that the marriage had never been consummated by cohabitation, and that some time after the marriage—how long after, she could not tell—the defendant had told her that he had contracted a disease which he did not like to talk about, and the nature of which he did not disclose. There was no evidence of misrepresentation, beyond the fact that the plaintiff said her husband told her before the marriage that his general health was good, excepting that he had a cold. The learned trial justice dismissed the complaint, writing a memorandum to the effect that the incapacity was temporary, and that the application for judgment in favor of the plaintiff should therefore be denied, upon the authority of Fisk v. Fisk, 6 App. Div. 432, 39 N. Y. Supp. 537.

The case of Fisk v. Fisk, supra, is scarcely in point; and, if no other question was presented than that of the power of a court of equity to annul a marriage under the circumstances claimed to exist herein, I am inclined to the view that the judgment should be reversed. The action in the case cited was brought to annul a marriage because the defendant, the wife, had been previously divorced. There was no claim of fraudulent representation, and the court held, following Clarke v. Clarke, 11 Abb. Prac. 228, that the mere fact that one of the parties had been divorced, which fact had not been disclosed to the other party, was not a ground for annulling the marriage for fraud. The general rule, however, was recognized, that the

law requires that when the contract is entered into the parties must then be not only competent to make the contract, and mentally competent to do the duties which the contract involves, but also physically able to meet its obligations. None of the authorities cited in the opinion in that case declares a rule which is controlling in this case. The general proposition that ill health, although concealed, or even although the condition has been misrepresented, will not of itself justify annulment,—an unquestionably sound proposition,—is not sufficient to meet the present case. Here the ill health directly affects the integrity and the essence of the marriage relation, and is calculated to subject the innocent party to the shame and misery of a loathsome disease on the consummation of the marriage. The question seems to be one of first impression. One or two cases may, indeed, be found where decrees of annulment have been rendered at special term, but not reviewed, in which the fraud consisted of an express false assertion before marriage of freedom from syphilitic disease, but none to which attention has been called relates to the existence of the disease alone as a ground of annulment. The law must be uniform and impartial in its application, and, in the absence of binding and explicit authority, I would be unwilling to assert a doctrine which would require a court of equity to hold that a man who finds a woman whom he has innocently married afflicted with venereal disease, and who therefore refuses to consummate the contract, may not procure a decree annulling the marriage because of the fraud involved in the existence of the condition, and its concealment. Such a condition would seem to be amply sufficient to justify a finding that the afflicted party was physically incapable at the time of meeting the obligations of the relation. The reasoning which refuses relief in the case of ordinary ill health has no application to a disease which involves disgrace in the contraction, contagion in marital association, probable injury to offspring, and which, from its secret and shameful nature, denies to the innocent and unsuspecting the protection of foreknowledge.

Nevertheless, I think the judgment should be affirmed. In all cases of this character it is of the first importance that the application for judicial relief should be of absolute good faith, and free from the suspicion of collusion. As was said by Lord Penzance in G—— v. G——, L. R. 2 Prob. & Div. 287, 289:

"The court is very solicitous in all cases of this kind to see that it is not imposed upon, because attempts are sometimes made to get rid of the bond of marriage for reasons other than those alleged in these suits. The first question, therefore, always, is as to the bona fides of the case."

It is impossible to read the record in this case without the creation of a very serious doubt as to the bona fides. The cause of complaint, in its aggravating and unusual character, was surely calculated to outrage a sensitive disposition and to call for speedy redress, yet the application has been long delayed, and for no apparent reason. The circumstances of the marriage, as disclosed by the plaintiff's evidence, are such as to cast doubt upon the genuineness of the charge of fraud. The parties were engaged to be publicly married on April 4, 1900, and invitations had been issued for a wedding reception to be held on that

day.   The plaintiff testified, however, that they were privately married on the 29th day of March preceding, but that the public reception was held on April 4th, six days after the marriage, in accordance with the invitations.   Under the circumstances, her inability to give any idea as to when it was that she first learned of her husband's alleged physical condition is significant.   Assuming the truth of the charge that he was then suffering from chronic venereal disease, so as to be wholly incapacitated from accomplishing the marriage relation, it is difficult to understand why the announced wedding day was anticipated, or at whose suggestion.   Credulity is surely taxed when a marriage in haste, followed by the leisurely receipt of public congratulations, must be ascribed to the importunity either of an impotent husband or a defrauded wife.   The conduct of the trial strengthens the doubt herein suggested.   Although the defendant made no answer, he appeared at the trial in person and by attorney, with the evident purpose of doing what he could to fasten upon himself the odious accusation. When his physician was called to testify to the existence of the disease, his counsel expressly waived all objection to the admission of the evidence, stating to the court that:

"I do this because my client has examined carefully into the facts of this case, and is convinced that he has no defense to this action, and he does not wish to interpose any defense."

Aside from the careful examination necessary to enable a husband to discover whether he has been so diseased for a continuous period of two years as to be incapable of sexual intercourse, it is quite evident that there is a wide difference between refraining from the making of a defense, and furnishing active aid and assistance to the prosecution.   In effect, the defendant established the case against himself. Indeed, when the physician himself hesitated to testify, the defendant's counsel hastened to assure him that the defendant had no objection. The conclusion is irresistible that the parties mutually desired an annulment of the marriage, that the action was brought in pursuance of the common purpose, and that the ground assigned has not been established with that freedom from suspicion of collusion and from doubt as to its integrity which the law wisely requires in this class of cases. The judgment should therefore be affirmed.

Judgment affirmed, without costs.   All concur, except GOODRICH, P. J., who dissents.

GOODRICH, P. J.   I agree with the reasoning in the first branch of the opinion of Mr. Justice HIRSCHBERG, and therefore am in favor of reversing the judgment, but I do not concur in the affirmance of the judgment on the ground stated by him.   If the evidence is open to his criticism, we might remit the case to the special term, for the purpose of permitting the plaintiff to introduce additional evidence on the question whether the action was prosecuted collusively; but, as the evidence now stands, I think the judgment should be reversed and a new trial granted.